OPINION OF THE COURT
Ira H. Margulis, J.
Defendant is charged with two counts of robbery in the first degree. On January 30, March 13, and April 8, 2014, this court held a Frye hearing as to whether or not the court should allow expert testimony on the issue of false confessions at the trial of this defendant. In support of the motion to allow this testimony, the defendant called Dr. Allison Redlich. At the conclusion of the testimony the court reserved decision and both sides submitted a memorandum of law. After reviewing all the evidence presented at the hearing, this court makes the following findings of facts and conclusions of law.
Findings of Fact
Dr. Allison Redlich, an associate professor at the School of Criminal Justice at the University at Albany, State University of New York, was the only witness called by the defendant. Her *173 curriculum vitae dated September 2013 was received in evidence at the hearing. The witness was qualified at this hearing as an expert in the field of “false confession studies.” In 2010, Dr. Redlich wrote an article that was published in Law and Human Behavior regarding false confessions and guilty pleas among offenders with mental health problems. This article was received in evidence at the hearing. In 2011, Dr. Redlich wrote an article that was published in Psychology, Public Policy, and Law that compared true and false confessions among persons with serious mental illness. This article was received in evidence at the hearing. In 2010, Dr. Redlich coauthored an article written with five other individuals that was published in Law and Human Behavior. Dr. Redlich referred to this publication as the “white paper” of a scientific consensus on police induced confessions and recommendations. This paper was approved by the American Psychology-Law Society and this was the second of two “white papers” published by the American Psychological Association on the issue of police interrogation and police induced confessions in the 45-year history of the association.
Dr. Redlich considers herself very knowledgeable in the field of interrogation techniques used by the police. She testified that she has probably given at least 100 presentations to scientific associations on the topic of false confessions. She stated she has read literature regarding law enforcement techniques and has been involved in two surveys sponsored and funded by the FBI where law enforcement officials were surveyed about their interrogation techniques and their perceived effectiveness of these techniques. She stated she also participated in a study where she and others reviewed and analyzed actual videotaped interrogations.
Dr. Redlich was paid for her services by the defendant’s attorney. Dr. Redlich stated she charged and received $250 an hour for this particular case and has billed approximately $7,000 in fees for her services thus far.
Dr. Redlich testified that she believed she had been qualified as an expert seven times at Frye hearings held in different states. She stated that in one criminal case in Albany, New York she was permitted to testify as an expert in her field. However, she stated that in several other instances she was not permitted by the court to testify as an expert on the grounds that her opinions have not been shown to be generally accepted and reliable within the relevant scientific community.
*174 Dr. Redlich described one of the studies she performed in the Santa Clara County Jail. In this study, Dr. Redlich and her research assistant went to the prison and spoke with prison personnel. The prison personnel provided a list of inmates that the correctional facility identified as prisoners with mental health problems. Dr. Redlich stated that they conducted interviews with two different sample groups. One sample group claimed to have given only true confessions and the other sample group claimed to have given false confessions. They interviewed the prisoners about,'their reasons and experiences with interrogation. Each inmate was compensated $50 for about an hour and a half interview. This study served as a strong basis for the information Dr. Redlich used regarding her publications on self-reporting false confessions.
In addition to the Santa Clara County Jail study, Dr. Redlich discussed how she replicated the Alt Key study and used this as a basis to form her opinions. She also told the court that this study has now been found to be flawed and unreliable and therefore no longer utilized by other members of Dr. Redlich’s scientific community.
Another study that Dr. Redlich strongly based her opinions upon was the Cheating Paradigm study. In this study, college students were tested to attempt to determine whether or not they would confess to cheating if they were encouraged to cheat, and then were falsely accused of cheating. She stated that in the study approximately 41% of students who were falsely accused of cheating confessed to doing it. However, it was elicited that this cheating study is not relevant to a situation where you are questioning suspects of a crime. She indicated that in the cheating study you are actively getting someone to do something wrong and trying to determine whether or not they will confess. Therefore, you are inducing students to cheat which differs entirely from a situation where a crime has been committed and you are merely questioning a potential suspect. When questioned about this Dr. Redlich admitted that this cheating study may be inapposite to the studies in the area of false confessions. The court finds that this study is inapplicable to the area of falsely induced confessions and that Dr. Redlich’s- reliance upon this study is unpersuasive.
Dr. Redlich discussed what she perceived to be the difference between an interview and interrogation. Dr. Redlich testified about the John E. Reid & Associates, Inc. (hereinafter Reid) *175 technique of interrogation, which she stated was the most often cited technique of interrogation used in the United States.* To her knowledge, there are other techniques utilized to conduct interrogations. She stated that in her opinion they are all psychologically oriented and rely upon the principles of social influence which are similar to the Reid technique. Dr. Redlich said that in the Reid manual there are several chapters devoted to the difference between an interview and an interrogation. According to Dr. Redlich, an interview is meant to be less formal and an interrogation is utilized by law enforcement to determine whether or not a person of interest is lying or telling the truth. Dr. Redlich opined that an interrogation is more likely to produce a false confession than an interview. However, she stated that she was never actually present during a police investigation of a subject. When Dr. Redlich was asked whether or not she knew what type, an interview or interrogation, was conducted in this particular case she told the court she had no knowledge about what, if any, type of questioning was done. Dr. Redlich also stated that it was her belief that the police use the same methods of interrogation for murderers as they do for those individuals who steal cars.
Dr. Redlich stated that she knew the steps of interrogation, although she failed to explain the basis of her knowledge. In her opinion the three steps of interrogation are (1) isolation; (2) tell the suspect that you know they are guilty; and (3) convert the oral statement to a written statement. Dr. Redlich testified that the goal of the Reid method is for the police to get a written confession.
Dr. Redlich also discussed two risk factors she believed were associated with false confessions. The two main categories she discussed were dispositional risk factors and situational risk factors. She defined dispositional risk factors as ones that are personal to the suspect that may render a suspect vulnerable. Situational risk factors are those that pertain more to the interrogation tactics such as the presentation of false information or evidence, lying to suspects, the length of interrogation and matters of that nature.
*176 When asked how often she thought the Reid technique was utilized here in the United States and by the New York City Police Department, Dr. Redlich could not answer these questions with any degree of certainty. Similarly, when she was asked whether or not she knew if the New York City Police Department was in fact trained in utilizing the Reid technique she stated that she did not know.
Dr. Redlich testified that mental illness is considered a dispositional risk factor and in her opinion someone who is mentally ill is more likely to give a false confession since it renders them more vulnerable. Dr. Redlich opined that mentally impaired individuals as a whole are more prone to confusion, depression, fatigue, and delusions which she stated are very common mental health symptoms. Therefore, she concluded that their ability to withstand what she termed “psychologically oriented interrogation techniques” is much lower than people without this type of vulnerability. Dr. Redlich stated that in her opinion a mentally ill person, who was innocent, is more likely to falsely confess because their “ability to withstand high pressure interrogation techniques” is more susceptible. She admitted that the studies in this field and the evidence to support this conclusion are “not entirely clear” yet. She testified that individuals with cognitive limitations, such as mental retardation, intellectual disabilities, traumatic brain injuries and mental disabilities, are more likely to give a false confession. She stated that she believed that people with mental retardation and impairments of that nature are more likely to be eager to please people in positions of authority and often “just go along with whatever suggestions are being made.” She opined that individuals with mental retardation have shortened breaking points when they are interrogated and “feel that the benefits of giving a false confession outweigh the long term consequences.” Dr. Redlich also stated that in her opinion people with substance abuse problems, especially long-term abusers, have cognitive limitations and are more likely to falsely confess.
Dr. Redlich discussed the second main category, situational risk factors, that she believes plays a significant role in false confessions. An example she gave was that lengthier interrogations are more likely to result in a false confession. She said that confessions typically last about one to two hours in length. She then stated that the Reid technique manual of interviewing and interrogation states that three to four hours is suf *177 ficient. Dr. Redlich went on to state that when you look at proven false confessions those interrogations tend to be lengthier. She testified that 80% of proven false confessions were six hours or longer and the average length of time for the interrogation was 16 hours.
Another situational factor Dr. Redlich considered important in her opinion regarding false confessions was the presentation of untrue evidence to suspects: She opined that if a suspect is really innocent, then the suspect really has no information, so in her opinion their confession is actually coming from the police, rather than the subject.
Dr. Redlich testified that some scientists have studied jurors’ reactions to and knowledge of interrogations. She stated that among all of the studies she was familiar with, the results showed that jurors are unfamiliar with interrogation practices and that studies also show that confessions weigh heavily in a juror’s consideration. As such, they have been labeled the “gold standard” of evidence. She said in her opinion it is very hard for a person to believe that a person would actually admit to a crime that he or she did not commit.
The defendant introduced an article (not authored by Dr. Redlich) that was published in Psychology, Crime & Law in 2010 regarding what jurors believe about interrogation and whether or not expert witness testimony would be helpful to them. This article was received in evidence at the hearing. The defendant also introduced into evidence another article, published in Behavioral Sciences & the Law in 2008, concerning people’s attitudes and beliefs about false confessions and what the public knows about interrogations and confessions. Another study that was published in 2010 in the Journal of Empirical Legal Studies entitled Juror Beliefs About Police Interrogations, False Confessions, and Expert Testimony was also received in evidence. Dr. Redlich testified that this article showed that jurors have a lot of misconceptions about the interrogation process.
Dr. Redlich stated that the field of false confession studies is generally accepted within the scientific community and that one of the primary ways to establish general acceptance is through peer reviews and getting publications in peer review journals. She said peer review is important because in her opinion peer review establishes that the “sciences follow a scientific method.”
Also received in evidence were two amicus briefs submitted by the American Psychological Association in two different *178 criminal cases in connection with false confessions and the admissibility of expert witnesses in false confession cases.
Conclusions of Law
The rule established in Frye requires that the proponent of a new or novel scientific technique establish, by sufficient evidence, the general acceptánce and reliability of the technique within the relevant scientific community. (Frye v United States, 293 F 1013 [DC Cir 1923].) Pursuant to Frye, the court must determine whether the scientific technique used is generally accepted as reliable within the relevant scientific community. (People v Wesley, 83 NY2d 417 [1994].) The term “scientific” means that the testimony is grounded in scientific methods and procedures. “Scientific knowledge” is more than simply a subjective belief or an unsupported speculation, but rather a body of known facts or ideas that are accepted in the relevant scientific community as true.
In People v Bedessie (19 NY3d 147 [2012]), the Court addressed the admissibility of expert testimony offered on the issue of the reliability of a confession and held that in a proper case expert testimony on the issue of the reliability of a confession should be admitted. The Court stated that research in the area of false confessions “purports to show that certain types of defendants are more likely to be coerced into giving a false confession.” (See People v Bedessie at 159.) Those individuals which the Bedessie Court believed were more likely to be coerced or to falsely confess were individuals who are highly compliant or intellectually impaired, those who suffer from a diagnosable psychiatric disorder, and those who are for some other reason psychologically or mentally fragile.
In the instant case, the court finds that based upon the credible evidence presented to the court the defendant failed to meet his burden of establishing through the testimony of Dr. Allison Redlich that expert testimony on false confessions is readily acceptable in the scientific community. Dr. Redlich’s testimony did not convince this court that an expert’s testimony on the issue of false confessions is scientifically reliable. It is insufficient under Frye that researchers agree that the phenomenon of false confessions exists and that interrogation tactics will likely increase the risk of law enforcement obtaining a false confession, although these researchers may differ on their opinions as to why and as to which tactics present a danger of obtaining these false confessions. Instead, the court must determine whether or not the testimony of the proposed *179 expert witness and any theories proffered by him or her is generally accepted as reliable within the relevant psychological community. (People v LeGrand, 8 NY3d 449 [2007].)
Here Dr. Redlich’s testimony merely established that it was her belief, as well as others who wrote articles and performed studies, that individuals can falsely confess. This testimony did not establish to this court’s satisfaction that the proffered expert testimony on false confessions has resulted in reliable scientific data or that there is a consensus in the relevant scientific community pursuant to. Frye. Moreover, Dr. Redlich’s testimony was insufficient in that it not only failed to establish that her expertise is generally accepted in the scientific community, but also her testimony failed to establish whether or not there was a known or potential rate of error in her methods of research. (Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579 [1993].)
A review of the record shows that while Dr. Redlich relied upon studies, articles, and had devoted much of her time to the area of false confessions and those individuals who may have falsely confessed, she had no personal knowledge of the circumstances under which this particular defendant confessed. Dr. Redlich based her conclusions upon her studies, peer reviews, published articles and her alleged knowledge of the Reid technique of questioning. Her testimony did not convince this court that the Reid technique in and of itself was likely to induce or produce a false confession. Her testimony was, in many respects, unpersuasive.
Although it is possible that some New York City detectives may use the Reid method when they question suspects, Dr. Redlich did not know what type of questioning New York City detectives used regularly. There was simply no evidence presented at the hearing to establish that the detectives in this case used the Reid method while questioning this defendant, nor was there any credible testimony offered by the defendant through Dr. Redlich that established that this defendant may have falsely confessed to these crimes due to his low level of intelligence or any psychological disorders. Although Dr. Redlich may have stated in her report that defendant has a well-documented history of psychiatric illness and intellectual limitations, she failed to state whether or not any of these limitations related to the confession made by the defendant in this case. She did not present any evidence that defendant was experiencing symptoms of mental illness when he made his *180 alleged statements or that his intellectual deficits contributed to his decision to make these alleged statements. In fact, Dr. Redlich never examined this defendant. While the court recognizes that the testimony of Dr. Redlich is proffered for the general proposition that under certain circumstances suspects may be more likely to confess falsely, her lack of any knowledge with respect to the defendant’s medical and physical condition and the circumstances of his arrest and interrogation would simply leave the jury to speculate as to whether or not the conditions Dr. Redlich attempted to replicate could lead to false confessions or that they even existed in this particular case.
Nonetheless, this court recognizes that Bedessie and its progeny have established that under certain circumstances a jury should be permitted to hear testimony from an expert regarding circumstances in which an individual may be more likely to give a false confession, specifically where a defendant is intellectually impaired, has a diagnosable psychiatric disorder or is psychologically or mentally fragile. Since in this case, the court has been made aware that defendant may fall into one or more of these categories, the court will allow the defendant to call a qualified expert who has personal knowledge of this defendant and the circumstances in this particular case which may have had an impact upon whether or not this particular defendant falsely confessed.
However, this court will not allow the defendant to call a witness in the area of false confessions to testify about the general nature of and situations where an individual is likely to render a false confession. This court will only permit a witness in this area to testify who has personal knowledge of this case, the circumstances under which the defendant made these alleged confessions, and this defendant’s mental infirmities.
Therefore, this court finds that while Bedessie is controlling in this case, the defendant has not met his burden of establishing that Dr. Redlich’s testimony should be accepted at trial as an expert in the area of false confessions. Moreover, the defendant has failed to establish at this hearing that any of the factors outlined in Bedessie affected this particular defendant in his alleged decision to make statements in this case.
Accordingly, should the defendant seek to offer such an expert at this trial, the court will allow the defendant to attempt to do so assuming defendant is able to lay the proper foundation for the admission of this testimony.

 The core principles of the Reid technique are: (1) do not make any promises of leniency; (2) do not threaten the subject with any physical harm; (3) do not deny the subject any of their rights; (4) do not deny the subject the opportunity to satisfy their physical needs; and (5) always conduct interviews and interrogations in accordance with the guidelines established by the courts. (See John E. Reid & Associates, Inc., The Reid Technique of Interviewing and Interrogation Position Paper.)